# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-2770

———————

Vicky Meyers,                                     *
                                                  *
            Appellant,                            *
                                                  *    Appeal from the United States
      v.                                          *    District Court for the
                                                  *    District of Nebraska.
Joyce Starke, Individually and in her             *
official capacity; Kathy Carter,                  *
Individually and in her official                  *
capacity; Darren Duncan, Individually             *
and in his official capacity,                     *
                                                  *
            Appellees.                            *

———————

Submitted: June 23, 2005
Filed: August 23, 2005

———————

Before MURPHY, BYE, and SMITH, Circuit Judges.

———————

SMITH, Circuit Judge.

Vicky Meyers appeals the decision of the magistrate judge[1] granting judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50 in favor of Nebraska Health and Human Services (NHHS), Joyce Starke, Kathy Carter, and

---

[1]The Honorable Thomas D. Thalken, United States Magistrate Judge for the District of Nebraska.

Darren Duncan (appellees). For reversal, Meyers argues that the magistrate judge erred: (1) in considering whether Meyers's speech motivated appellees' action; (2) in ruling that amending the complaint to include conspiracy claims was futile under the intracorporate conspiracy doctrine; (3) in excluding issues relevant only to Meyers's proposed amended complaint from the pretrial order; (4) in granting appellees' motion for judgment as a matter of law; and (5) in overruling Meyers's Rule 50 motion for judgment as a matter of law and motion for a new trial. We affirm.

I. *Background*

Starting in May 1998, Meyers worked for NHHS as a Protection and Safety Worker (PSW) in its Gering office. In that position, Meyers monitored children in the custody and care of NHHS. She served as part of the NHHS staff group (Treatment Team) that made placement and treatment recommendations to the courts for children. In that role, Meyers appeared at court hearings and testified as a representative of NHHS and the Treatment Team. Joyce Starke and Darren Duncan supervised Meyers in Gering. Kathy Carter, the NHHS Protection and Safety Administrator for the Western Service Area, supervised Starke and Duncan and was responsible for personnel decisions in the Gering local office.

In late 1999, Meyers disagreed with the Treatment Team's recommendation for the best regimen for two children exhibiting dysfunctional behaviors in their foster placement. Meyers believed that therapeutic placement was preferable to their current situation. Starke and Duncan agreed with the Treatment Team. Meyers alleges that the remainder of the Treatment Team strongly urged her to change her mind and agree with them. At a December 1999 court hearing to determine placement, Meyers testified to the opinion of the Treatment Team, but when pressed by the judge, she claimed that she had been pressured to change her opinion to conform with that of the other Treatment Team members. However, Meyers also testified that the children could receive appropriate treatment in their current placement. In February 2000,

Meyers's supervisors transferred her from Ongoing Services to Intake. Meyers resigned from NHHS on May 9, 2000.

Meyers filed a complaint in the United States District Court for the District of Nebraska alleging violations of 42 U.S.C. § 1983 and her First Amendment right to free speech. Meyers sued NHHS, and also sued Starke, Duncan, and Carter in both their official and individual capacities. Meyers alleged she had been unlawfully demoted for exercising her right to comment on a matter of public concern– children's welfare. She sought damages for lost wages and benefits, injury to reputation, loss of enjoyment of life, inconvenience, and embarrassment.

The appellees filed a motion to dismiss, and the district court dismissed all claims against NHHS and the appellees in their official capacities. The case was then tried by a United States magistrate judge by agreement. The apellees filed a motion for summary judgment alleging they were entitled to qualified immunity, which was granted. However, we reversed and remanded for trial holding that disputed fact questions remained as to whether there had been an adverse employment action when Meyers's job duties were changed. *Meyers v. Nebraska Health & Human Servs.*, 324 F.3d 655 (8th Cir. 2003).

Although we reversed the magistrate judge, we agreed that as a matter of law, speech regarding the care of children is a matter of public concern. *Bowman v. Pulaski County Special Sch. Dist.*, 723 F.2d 640, 644 (8th Cir. 1983). The appellees neither challenged this holding, nor did they offer evidence that NHHS's interest in promoting workplace efficiency outweighed Meyers's right to speak on a public issue, and the magistrate judge failed to find that it did.[2] *Meyers*, 324 F.3d at 659.

---

[2]Even if Meyers spoke out on a matter of public concern, her interests are outweighed "if the [appellees] show that [the] speech so severely damaged office harmony and working relationships that [appellees'] interest in promoting an effective workplace outweighs [Meyers's] First Amendment rights." *Hyland v. Wonder*, 972

On remand, after Meyers presented her case-in-chief, the magistrate judge dismissed all claims against Starke and Duncan pursuant to Fed. R. Civ. P. 50. When the remaining parties rested their respective cases, each moved for judgment as a matter of law under Rule 50. The magistrate judge took the matter under advisement and submitted the case to the jury. The jury deadlocked. Meyers renewed her motion for judgment as a matter of law and moved for a new trial. Carter also renewed her motion for judgment as a matter of law. The magistrate judge granted judgment as a matter of law in favor of Carter, determining that no reasonable jury could conclude that Meyers had suffered an adverse employment action. Meyers then instituted the instant appeal.

## II. *Discussion*

We review a grant of judgment as a matter of law under Fed. R. Civ. P. 50 de novo. *Walsh v. Nat'l Computer Sys., Inc.*, 332 F.3d 1150, 1157 (8th Cir. 2003) (citing *Kipp v. Missouri Highway & Transp. Comm'n*, 280 F.3d 893, 896 (8th Cir. 2002)). "[We draw] 'all reasonable inferences in favor of the nonmoving party, and [do] not make credibility determinations or weigh the evidence." *Kipp*, 280 F.3d at 896. We "assume that the jury resolved all conflicts of evidence in favor of the [nonmoving] party, assume as true all facts which the prevailing party's evidence tended to prove, . . . and deny the motion, if in light of the foregoing, reasonable jurors could differ as to the conclusion that could be drawn from the evidence." *Minneapolis Cmty. Dev. Agency v. Lake Calhoun Assoc.*, 928 F.2d 299, 301 (8th Cir. 1991).

### A. *Whether Appellees' Actions were Motivated by Meyers's Speech*

Meyers argues that our holding in the prior appeal determined that appellees' actions were motivated by her speech on a matter of public concern that outweighed NHHS's interests. Meyers further argues that this holding was not challenged in the

---

F.2d 1129, 1139 (9th Cir. 1992), cert. denied, 113 S. Ct. 2337 (1993). The employer bears the burden of proving that the balance of interests weighs in its favor. *Johnson v. Multnomah County*, 48 F.3d 420, 426 (9th Cir. 1995).

first appeal and cannot be challenged in this appeal. Whether Meyers's speech was protected is a question of law. *Lewis v. Harrison Sch. Dist. No. 1*, 805 F.2d 310, 313 (8th Cir. 1986). We have already held that Meyers's speech was protected. *Meyers*, 324 F.3d at 659. The magistrate judge permitted the factual issue of causation—whether appellees' actions were motivated by Meyers's speech—to go to the jury. The jury deadlocked. The magistrate judge refused to grant either party's Rule 50(b) motion on this fact issue. The magistrate did not err.

## B. *Amending the Complaint*

At trial, Meyers moved to amend her complaint by adding a cause of action under 42 U.S.C. § 1985(2),[3] alleging interference with giving court testimony as a witness. The magistrate judge denied the motion. Meyers argues that the magistrate judge erred because the factual allegations of the complaint did not change and always stated a cause of action under 42 U.S.C. § 1985(2). We disagree.

---

[3] 42 U.S.C. § 1985 (2) is violated

> [i]f two or more persons in any State or Territory conspire to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified, or to influence the verdict, presentment, or indictment of any grand or petit juror in any such court, or to injure such juror in his person or property on account of any verdict, presentment, or indictment lawfully assented to by him, or of his being or having been such juror; or if two or more persons conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person, or class of persons, to the equal protection of the laws.

Federal Rule of Civil Procedure 15 provides that a party may amend by leave of court which shall be freely given when justice requires. Justice does not require it in this case. Here any conspiracy claim under 42 U.S.C. § 1985(2) is barred under the intracorporate conspiracy doctrine, which allows corporate agents acting within the scope of their employment to be shielded from constituting a conspiracy under § 1985. *Cross v. General Motors Corp.*, 721 F.2d 1152, 1156 (8th Cir. 1983). We have extended the intracorporate conspiracy doctrine to governmental entities. *See Runs After v. United States*, 766 F.2d 347, 354 (8th Cir. 1985); *Richmond v. Bd. of Regents*, 957 F.2d 595, 598 (8th Cir. 1992). Because appellees are employees of NHHS, they are protected by the intracorporate conspiracy doctrine. The magistrate judge did not err in denying the motion to amend.

## C. *Exclusion of Issues from the Pretrial Order*

In her brief, Meyers states the next issue as "[w]hether the trial court erred in sustaining the defendant's objection to controverted issues no. 7 and 8 to insert the issue of whether the defendants conspired to interfere by threat, force of intimidation to keep the plaintiff from testifying on any matter pending freely, fully and truthfully." Federal Rule of Appellate Procedure 28(a)(5) requires an appellant to include in its brief a statement of the issues presented for review. To be reviewable, an issue must be presented in the brief with some specificity. Failure to do so can result in waiver. *Sweet v. Delo*, 125 F.3d 1144, 1159 (8th Cir. 1997). Meyers's brief focused exclusively on one already addressed—whether Meyers spoke on a matter of public concern. Consequently, we consider this issue to be waived.[4]

---

[4]Similarly, Meyers failed to discuss the overruling of her Rule 50 motion and her motion for new trial. Instead, Meyers argues about jury instructions. Aside from failing to comply with Fed. R. App. P. 28(a)(5), we find that the evidence does not support a grant of judgment as a matter of law in Meyers's favor.

D. *Granting Appellees' Motion for Judgment as a Matter of Law*

Meyers contends she adduced sufficient probative evidence to have a jury determine whether the appellees violated her free speech rights. Because the record is clear that Starke and Duncan did not have the authority to transfer Meyers, we agree with the decision of the magistrate judge granting judgment as a matter of law in their favor.

The magistrate judge also granted Carter's Rule 50(b) motion. Carter, who did have the authority to reassign Meyers, argues that Meyers suffered no material job change and thus could not show an adverse employment action. While Meyers's title and functions changed, her salary and benefits did not. Other NHHS employees testified that Meyers was not demoted and that the child welfare responsibilities of Intake were just as important as those fulfilled by workers performing Ongoing Services or serving in other system positions.[5]

---

[5]Meyers's coworkers testified regarding the Intake position. Lisa Bell, who had been a PSW for thirteen years, described Intake as the "cornerstone" of child protective case work. Bell testified that she did not consider Intake a lesser position because it was the "foundation of everything." Bell also testified that coworkers' feelings toward Meyers did not change after the reassignment. John Zach testified that he had been a PSW for eighteen years and had performed all three child protection functions. Zach indicated that Intake was a critical phase and was not demeaning. Zach also did not think less of Meyers after her reassignment. Former Intake PSW, Pat Anderson, testified that Intake was important and not demeaning. She stated that no one "looked down on" Meyers or thought less of her when she was reassigned to Intake. Kelly Case, who had been a PSW for nineteen years also testified. She had performed all three child protection functions. Case indicated that when she first began working at NHHS, supervisors also worked in Intake. Case stated that Intake was neither demeaning nor a lesser assignment, and no one looked down on Meyers after being reassigned to Intake.

When drawing all reasonable inferences in favor of Meyers, *Kipp*, 280 F.3d at 896, we are left with the conclusion that the magistrate judge did not err in granting Carter's Rule 50(b) motion. The evidence, taken in the light most favorable to Meyers showed that Meyers's new position, an Intake PSW, receives reports of suspected child abuse or neglect and determines NHHS's response. An Intake PSW must have the skills to gather the information necessary to perform a thorough investigation. An Intake PSW receives seventeen weeks of specialized training. Finally, an Intake PSW must possess the identical educational background as an ongoing services worker—a bachelor's degree in the field of human services.

"In order to establish a claim for unlawful First Amendment retaliation, a public employee must show that [she] suffered an adverse employment action that was causally connected to [her] participation in a protected activity." *Duffy v. McPhillips*, 276 F.3d 988, 991 (8th Cir. 2002). "An adverse employment action is exhibited by a *material* employment disadvantage, such as a change in salary, benefits, or responsibilities." *Bradley v. Widnall*, 232 F.3d 626, 632 (8th Cir. 2000) (emphasis in original). "Changes in duties or working conditions that cause no materially significant disadvantage . . . are insufficient to establish the adverse conduct required to make a prima facie case." *Id.* (quoting *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994)).

Meyers testified that in Intake, she did not have a full workload. However, Meyers's testimony is uncorroborated. "A mere scintilla of evidence is inadequate to support a verdict[.]" *Clark v. Kansas City Missouri Sch. Dist.*, 375 F.3d 698, 701 (8th Cir. 2004) (quoting *Larson v. Miller*, 76 F.3d 1446, 1452 (8th Cir. 1996)); *see also O'Bryan v. KTIV Television*, 64 F.3d 1188, 1191 (8th Cir. 1995) (uncorroborated statements are insufficient to create an issue of material fact). Meyers also testified that Intake was handled by a receptionist and a case aide. We do not find any evidence in the record for this conclusion. Meyers actually testified that the receptionist and case aide only took calls when the Intake worker was unavailable.

The receptionist and case aide then turned over any information they had to the Intake PSW. The evidence clearly shows that a PSW has always worked Intake and that Anderson was the full-time Intake worker from 1998 until Meyers was reassigned to Intake.

For these reasons, we affirm the decision of the magistrate judge.

BYE, Circuit Judge, concurring in part, dissenting in part.

I fully concur in parts II.B and II.C, concur in the conclusion reached by the majority in part II.A, however respectfully dissent from most of part II.D. In regard to part II.A, I agree Vicky Meyers's actions were constitutionally protected, but would not rely on the dicta in Meyers v. Nebraska Health & Human Servs., 324 F.3d 655, 659 (8th Cir. 2003) (Meyers I), to reach this result. In regard to part II.D, I agree the magistrate judge properly entered judgment as a matter of law in favor of defendants Starke and Duncan, who did not have the authority to transfer Meyers, but disagree as to Carter, the defendant responsible for transferring Meyers.

Nothing has changed since our decision in Meyers I where we found "evidence of a considerable downward shift in skill level required to perform her new job responsibilities, coupled with evidence of a work load reduced to the degree supervisors had to find other 'tasks' to keep her busy, are sufficient to support a finding Meyers's reassignment was a significant and material change in her employment conditions." Id. at 660. At trial, the jury heard Meyers testify she did not have a full workload and her job responsibilities decreased significantly. The majority dismisses this testimony as a mere scintilla of evidence, inadequate to support a jury verdict. I would not classify the plaintiff's sworn testimony at trial a mere scintilla of evidence. A plaintiff's testimony often provides ample evidence to support a jury verdict. See Webner v. Titan Distrib. Inc., 267 F.3d 828, 836 (8th Cir. 2001). In discrediting Meyers's testimony the majority essentially usurps the jury's

role as factfinder. United States v. Martinez, 958 F.2d 217, 218 (8th Cir. 1992) ("It is the sole province of the jury to weigh the credibility of a witness."). A significant number of jurors found her testimony to be compelling to the point it could not break the deadlock existing among them even after the announcement it could accept less than a unanimous verdict. I would therefore vacate the magistrate judge's entry of judgment as a matter of law in favor of defendant Carter and remand for a new trial.

_____