LOKEN, Circuit Judge,
concurring in part and dissenting in part.
I concur in the decision to affirm dismissal of LaKeysia Wilson’s disparate treatment claim. I respectfully dissent from the decision to reverse dismissal of her retaliation claim. In my view, Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), and University of Texas Southwestern Medical Center v. Nassar, — U.S. -, 133 S.Ct. 2517, 186 L.Ed.2d 503 (2013), properly read, require that the district court be affirmed.
In reviewing the retaliation claim, there are three basic principles we must apply. First, Wilson did not need to plead a prima facie case, which is an evidentiary rather than a pleading standard, to survive DHS’s Rule 12(b)(6) motion to dismiss. See Blomker v. Jewell, 831 F.3d 1051, 1056 (8th Cir. 2016), citing Swierkiewicz v. Sorema, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). Second, “to survive a motion to dismiss, [an employment discrimination] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face.” Iqbal, 556 U.S. at 678, 129 S.Ct. 1937, quoting Bell Atlantic Corp. v. Twom *375 bly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible “where the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” Blomker, 831 F.3d at 1055 (quotation omitted). “The plausibility standard ... asks for more than a sheer possibility that a defendant has acted unlawfully.” Iqbal, 556 U.S. at 678, 129 S.Ct. 1937. Third, “Title VII retaliation claims must be proved according to traditional principles of but-for causation .... This requires proof that the unlawful retaliation would not have occurred in the absence of the alleged ’wrongful action or actions of the employer.” Nassar, 133 S.Ct. at 2533.
Wilson’s complaint alleged she was “the victim of discrimination and retaliation, after having complained about discrimination based on race, when she was issued written warnings, placed on a PIP, and ultimately terminated.” As the court acknowledges, the only fact allegation in the complaint even hinting that unlawful retaliation was the but-for cause of the alleged adverse employment actions was the temporal proximity — six-weeks—between Wilson filing her first, time-barred complaint of unlawful harassment and her ultimate termination. (The allegation that she was a victim of retaliation is “eonelusory and not entitled to be assumed true,” Iqbal, 556 U.S. at 681, 129 S.Ct. 1937.) Temporal proximity is invariably relevant in determining whether a retaliation plaintiff has sufficiently proved but-for causation, either in resisting summary judgment, or at trial. This appeal raises a different question, when is an allegation of temporal proximity, without more, sufficient to plead a plausible claim of retaliation.
“Generally ... a temporal connection alone is not sufficient to establish a causal connection.” Turner v. Gonzales, 421 F.3d 688, 697 (8th Cir. 2005); see Kipp v. Mo. Highway & Transp. Comm’n, 280 F.3d 893, 897 (8th Cir. 2002). The Fifth Circuit has stated this principle more categorically. See Strong v. Univ. Healthcare Sys., L.L.C., 482 F.3d 802, 808 (5th Cir. 2007) (“[W]e affirmatively reject the notion that temporal proximity standing alone can be sufficient proof of but-for causation.”). The Supreme Court has observed that “[t]he cases that accept mere temporal proximity between an employer’s knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be ‘very close.’ ” Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 273, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (citations omitted). But these cases were not decided on the pleadings. Because temporal proximity is a relevant but not determining factor in establishing the presence or absence of but-for causation, and because plausibility is a context-specific inquiry, a district court must be wary of dismissing a retaliation complaint on the ground that the element of but-for causation cannot be plausibly inferred because the complaint pleaded temporal proximity that was not “very close.”
Here, the court completes its Rule 12(b)(6) analysis of the issue in two steps: (1) “the six-week period between the EEOC charge and the termination plausibly alleges a but-for causal connection,” which of course simply assumes the issue being decided; and (2) the other fact allegations in the complaint do not provide the “obvious alternative explanation” the Supreme Court referred to in Iqbal, 556 U.S. at 682, 129 S.Ct. 1937. But the Supreme Court referred to an “obvious alternative explanation” in Iqbal when discussing the specific allegations in the Iqbal and Twom-bly complaints. Highlighting this passage permits the court to avoid properly apply *376 ing the holding in Iqbal: “where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged— but it has not ‘show[n]’ — ‘that the pleader is entitled to relief.’ ” 556 U.S. at 679, 129 S.Ct. 1937, quoting Fed. R. Civ. P. 8(a)(2). That is a pleading, not a summary judgment, standard.
Review of the chronology of events set forth in Wilson’s complaint leads me to conclude she alleged no more than the “mere possibility” that unlawful retaliation was the but-for cause of her termination. Wilson alleged she was:
—Promoted to program supervisor in March 2014.
—Unfairly criticized, given the choice of demotion or termination on June 30, then stripped of supervisory duties on July 2.
—Filed her initial, time-barred EEOC charge on September 8.
—Placed on a PIP on September 30.
—Given a written warning for work that a Caucasian female employee did not accomplish on October 7.
—Terminated on October 22.
—Filed the EEOC charge here at issue on October 23, in which she alleged, “I was told that I was discharged for performance.... ”
This scenario provides a far.more likely— indeed “obvious” — alternative explanation of DHS’s actions, namely, that DHS was following a regularized process of progressive discipline, begun before Wilson filed her initial charge with the EEOC, that led to her discharge when her performance did not improve. This sequence rather precisely parallels a hypothetical the Supreme Court posed in Nassar, 133 S.Ct. at 2532, in explaining why the traditional but-for causation standard applies to Title VII retaliation claims:
Consider in this regard the case of an employee who knows that he or she is about to be fired for poor performance, given a lower pay grade, or even just transferred to a different assignment or location. To forestall that lawful action, he or she might be tempted to make an unfounded charge of racial, sexual, or religious discrimination; then, when the unrelated employment action comes, the employee could allege that it is retaliation .... Even if the employer could escape judgment after trial, the lessened causation standard would make it far more difficult to dismiss dubious claims at the summary judgment stage.... It would be inconsistent with the structure and operation of Title VII to so raise the costs, both financial and reputational, on an employer whose actions were not in fact the result of any discriminatory or retaliatory intent.
Nassar was not the first time the Supreme Court has made this point: “Employers need not suspend previously planned transfers [or discipline] upon discovering that a Title VII suit has been filed, and their proceeding along lines previously contemplated, though not definitively determined, is no evidence whatever of causality.” Breeden, 532 U.S. at 272, 121 S.Ct. 1508. True, both Breeden and Nassar were decided at the summary judgment stage, but their teaching must, in my view, be taken into account in deciding a Rule 12(b)(6) motion under the pleading standard defined in Iqbal. I read Iqbal and Nassar together as instructing lower courts to stop letting contrived retaliation claims hijack or delay legitimate employer performance decisions. I dissent from the court’s decision not to follow this controlling authority.
Accordingly, I would affirm the judgment of the district court.