# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1050

_____

Greater St. Louis Construction Laborers Welfare Fund, an employee benefit plan;
Board of Trustees of the Greater St. Louis Construction Laborers Welfare Fund;
Construction Laborers Pension Trust of Greater St. Louis; Board of Trustees of the
Construction Laborers Pension Trust of Greater St. Louis; St. Louis Vacation Trust
Fund, an employee benefit plan; Board of Trustees of the St. Louis Vacation Trust
Fund; Construction Laborers & Contractors Training Fund of Eastern Missouri, an
employee benefit plan; Board of Trustees of the Construction Laborers &
Contractors Training Fund of Eastern Missouri; Local Union, Nos. 42-110;
Laborers International Union of North America; AFL-CIO, labor organizations

*Plaintiffs - Appellants*

v.

RoadSafe Traffic Systems, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 22, 2022
Filed: December 9, 2022

_____

Before LOKEN, BENTON, and KOBES, Circuit Judges.

_____

BENTON, Circuit Judge.

A collective bargaining agreement ("CBA") required RoadSafe Traffic Systems, Inc. to contribute to four employee benefits Funds. The Funds sued for unpaid contributions, alleging that the CBA unambiguously requires contributions for all hours worked by covered employees, regardless of the type of work performed. RoadSafe countered that the CBA unambiguously requires contributions only for construction and highway work. The district court[1] granted summary judgment to RoadSafe. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

The CBA required RoadSafe to pay fringe-benefits contributions and supplemental dues for specified types of work by its employees. The Funds hired an auditor to review RoadSafe's earning records for 2014 through 2016.

The records coded all "shop hours"—non-construction and non-highway work—as nonreportable hours ("NON"). The auditor concluded that RoadSafe had underreported 5,974.5 hours worked and underpaid $3,914.24 in supplemental dues. The auditor explained:

> The employer does not report "Shop" hours where the job duties performed include non-job related shop work, traveling, filling out paperwork, and loading/unloading not related to a Prevailing Wage job. These hours are noted as "NON" under the "Craft" and "Class" columns of the earnings records provided. However, based on a review of the [CBA], and a conversation with the Funds' attorney, all loading and unloading is work covered under the CBA and, therefore, reportable. Therefore, because the loading and unloading work could not be distinguished from other job duties within the "NON" category of hours, and because the Funds do not recognize "Non-Reportable"

[1]The Honorable Patricia L. Cohen, United States Magistrate Judge for the Eastern District of Missouri to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

-2-

hours under the Split-Time Doctrine, all "NON" hours are included in the "Reportable Hours" column above.

RoadSafe contended that NON hours were not covered by the CBA and that the loading or unloading work coded as NON only "pertain[ed] to sales orders delivered to customers or the transfer of equipment between branches." The auditor requested additional documentation "that distinguishes the 'Non-Reportable' Loading/Unloading 'Shop Time' from other 'Shop Time' duties." RoadSafe replied that it had no further documentation beyond the earning records. The auditor requested further clarification. RoadSafe did not respond.

The Funds then demanded from RoadSafe $90,997.61 in contributions, $5,334.19 in supplemental dues, $18,495.40 in liquidated damages, and $13,753.98 in interest—for a total of $128,561.19. The auditor's final report arrived at the same calculations. At the request of the Funds, the auditor revised the final report, removing all "'NON' hours, and their associated wages, where these hours were the only hours worked that day." This made a total of $105,654.96.

The Funds sued, alleging that the CBA unambiguously requires contributions for all hours worked by covered employees, regardless of the work performed. RoadSafe countered that, by either the jurisdiction-limiting provisions of Article II or the wage-and-contribution schedules of Article V, the CBA unambiguously requires contributions only for construction and highway work. The district court granted summary judgment to RoadSafe. The Funds appeal.

"This court reviews de novo a grant of summary judgment." ***Torgerson v. City of Rochester***, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). "Summary judgment is proper if 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" ***Houston Cas. Co. v. Strata Corp.***, 915 F.3d 549, 551 (8th Cir. 2019), *quoting* **Fed. R. Civ. P. 56(a)**.

II.

The issue is whether the CBA obligates RoadSafe to make contributions to the Funds for all or only specified types of work. The Employee Retirement Income Security Act ("ERISA"), "codified at 29 U.S.C. § 1001-1461 (1994), is a comprehensive statute that sets certain uniform standards and requirements for employee benefits plans." *Minn. Chptr. of Assoc. Builders & Contrs., Inc. v. Minn. Dep't of Pub. Safety*, 267 F.3d 807, 810 (8th Cir. 2001). By Section 515 of ERISA, the CBA determines an employer's contribution obligations:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

**29 U.S.C. § 1145**. "Under ERISA § 515, the Funds may collect only those contributions that [an employer] is contractually obligated to pay." *Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g*, 217 F.3d 578, 582 (8th Cir. 2000), *citing DeVito v. Hempstead China Shop, Inc.*, 38 F.3d 651, 653-54 (2d Cir. 1994).

This court applies "federal common law rules of contract interpretation to discern the meaning of the terms in an ERISA plan." *Harris v. The Epoch Grp., L.C.*, 357 F.3d 822, 825 (8th Cir. 2004). "A CBA must be construed as a whole with its terms read in context." *Nesse as Trs. of Minn. Laborers Health & Welfare Fund v. Green Nature-Cycle, LLC*, 7 F.4th 769, 776 (8th Cir. 2021). "Where the words of a [CBA] are clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 435 (2015).

The Funds argue that Article V of the CBA unambiguously requires contributions for all hours worked by covered employees, regardless of the work performed. Section 5.01 of the CBA establishes contribution schedules "when

employees are engaged in the general activities in conjunction with Building Construction and Highway/Heavy." "Building Construction" is defined by Section 5.01 to include:

> building structures, including modifications thereof and additions or repairs thereto, intended for use for shelter, protection, comfort or convenience . . . the demolition of, and foundations for, building construction; however, not the preparation, grading, and improvement of the property or site. Actual excavation for building basements, footings or foundations and backfilling of building basements, footing or foundations . . . .

"Highway/Heavy" is defined by Section 5.01 to include:

> excavating, grading and constructing of public highways and bridges, and public heavy improvements, including roads, viaducts, airports, sewers, streets, alleys; and railroad construction including grading and track laying; retaining walls and culverts, canals, drainage projects, levees, sidewalks, dams, pavements of all classes; water mains including laying and caulking, and public utilities, and public utility projects, and other work of like character, not including, however, the actual erection of buildings.

Implementing these definitions, subsequent CBA subsections require RoadSafe to "contribute (specific amounts will be noted on wage schedules) per hour for each actual hour worked" by covered employees. RoadSafe's contribution obligations under the CBA arise in the wage schedules of Section 5.01. No Section 5.01 wage schedules mention any work other than "Building Construction" or "Highway/Heavy."

By its plain language, Article V of the CBA limits RoadSafe's contribution obligations to "Building Construction" and "Highway/Heavy" categories of work. Because work coded as NON or "shop hours" is not within the definitions of either "Building Construction" or "Highway/Heavy," the CBA does not require RoadSafe to make contributions for the coded work. "[T]he Funds may collect only those

contributions that [an employer] is contractually obligated to pay." ***McKenzie Eng'g***, 217 F.3d at 582.  The district court properly granted summary judgment to RoadSafe.[2]

### III.

ERISA requires employers to "maintain records with respect to each of [their] employees sufficient to determine the benefits due or which may become due to such employees." **29 U.S.C.S. § 1059(a)**.  The Funds claim that "RoadSafe's records were not sufficiently detailed to inform the examiner how many of the hours were for loading and unloading work and other work that RoadSafe contends is 'non-covered.'"  But RoadSafe presented evidence that all hours coded as NON were for activities omitted from the CBA definitions of "Building Construction" and "Highway/Heavy" and that the CBA did not require RoadSafe to document non-covered hours.  Failing to present evidence to the contrary, the Funds are therefore left "with an unremedied failure of proof."  *See **McKenzie Eng'g***, 217 F.3d at 585.[3]

---

[2]This court thus need not address RoadSafe's argument that the jurisdiction-limiting provisions of Article II also would justify summary judgment.

[3]The Funds, relying on cases from other circuits, propose a burden-shifting framework that requires employers to provide evidence of the "precise amount of work performed" when funds "produce evidence raising genuine questions about the accuracy of the employer's records." ***Brick Masons Pension Tr. v. Indus. Fence & Supply, Inc.***, 839 F.2d 1333, 1337-38 (9th Cir. 1988).  Even if this were the proper framework, the Funds have not raised a genuine question about the accuracy of RoadSafe's records.  This court has provided guidance for the facts here:  Where a dispute "arises because of assumptions the Funds made in interpreting [an employer's] records," and the employer "come[s] forward with evidence establishing that the auditor's assumptions were unfounded," the Funds must present evidence to the contrary or be left "with an unremedied failure of proof." ***McKenzie Eng'g***, 217 F.3d at 585.

The Funds try to compare the CBA here to those in *Bunn Enterprises, Inc. v. Ohio Operating Engineers Fringe Benefit Programs*, 606 Fed. Appx. 798 (6th Cir. 2015) and *McCleskey v. DLF Construction, Inc.*, 689 F.3d 677 (7th Cir. 2012). However, the CBA here is distinguishable from those in *Bunn* and *McCleskey* because it expressly limits contributions to specified categories of work in Article V.  As the Sixth Circuit explained in *Bunn*, "[h]ad the drafters wanted to limit benefits contributions solely to 'covered' work hours, they could have stated as much."  **Bunn**, 606 Fed. Appx. at 802.  The Seventh Circuit found that the CBA there did not expressly limit the employer's contribution obligations.  *See* **McCleskey**, 689 F.3d at 680 ("In short, there is no language in . . . the CBAs that limits [the employer's] obligations to make fringe benefit contributions.").  Unlike *McCleskey* and *Bunn*, the plain text of the CBA limits RoadSafe's contribution obligations to covered work defined as "Building Construction" or "Highway/Heavy."

Finally, the Funds contend that summary judgment for RoadSafe is improper because the auditor's reports reflect undisputed variances in contributions owed.  But the Funds did not raise this argument in the district court.  "Merely mentioning the facts—even in the context of another argument—is not enough to preserve the argument."  **Sanzone v. Mercy Health**, 954 F.3d 1031, 1045 (8th Cir. 2020).  "[A]rguments not presented to the court below will not be considered on appeal."  **Id.**, *quoting* **Glover v. McDonnell Douglas Corp.**, 150 F.3d 908, 909 (8th Cir. 1998).

\* \* \* \* \* \* \*

The judgment is affirmed.

_____